IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. RANGAVES,<br><br>   Plaintiff,<br><br> vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>   Defendant.        / | No. C 04-4194 MEJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff James P. Rangaves ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying his claim for disability insurance benefits. Pending before the Court are the parties' cross-motions for summary judgment. Having read and considered the parties' papers, the administrative record below, and the relevant legal authority, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment for the reasons set forth below.

## II. BACKGROUND

**A. Procedural History**

In June 2002, Plaintiff filed an application for disability insurance benefits ("DIB") (Tr. 117-120) and subsequently filed for supplemental security income ("SSI") benefits (Tr. 343-50). His DIB application was denied initially and both applications were denied upon reconsideration (Tr. 72-73, 74-77, 79-83, 351). On November 14, 2003, following a hearing at which Plaintiff, his representative, and a vocational

expert appeared, ALJ Richard P. Laverdure found that Plaintiff's impairments did not prevent him from performing sedentary work for any consecutive period from his alleged disability onset date through the date of the decision (Tr. 22-30). ALJ Laverdure's decision became the final decision of the Commissioner when the Appeals Council declined to review it in July 2004 (Tr. 12-14).

**B.     Factual Background**

Plaintiff was born on September 12, 1960 (Tr. 118), and alleges an inability to work since June 2001, due to a herniated disc (Tr. 132). Plaintiff has fourteen years of education (Tr. 138) and work experience as a machine operator and printer (Tr. 145).

In June 2001, Plaintiff injured his back and foot when lifting a roll of paper at his job at a bookbindery (Tr. 205). On June 18, 2001, David A. Keefer, M.D., analyzed x-rays of Plaintiff's lumbosacral spine and left foot. The x-rays revealed chronic degenerative disk disease with hypertrophic spurring and an essentially normal left foot with no evidence of stress fracture (Tr. 247).

On January 12, 2001, Geoffrey S. Tompkins, M.D., evaluated Plaintiff's right shoulder (Tr. 194-95). At the evaluation, Plaintiff reported two months of continued right shoulder pain and an isolated episode of numbness. Dr. Tompkins found that Plaintiff's cervical spine range of motion was restricted in extension and rotation but painless, and that his range of motion of the shoulders showed symmetric forward elevation, external rotation, internal rotation, and abduction with mild loss of scapulohumeral rhythm on the right. Dr. Tompkins also found prominence of Plaintiff's right acromioclavicular joint and local tenderness, tenderness at the rotator cuff insertion, and pain with slight weakness of supraspinatus testing but normal infraspinatus testing. Dr. Tompkins recommended obtaining an MRI to rule out an underlying rotator cuff tear and physical therapy to work on range of motion and strengthening, and prescribed Feldene 10 mg q.d. *Id.*

In June and July 2001, Plaintiff received medical attention at North Bay Corporate Health Services, Inc. for low back and left foot pain (Tr. 198-205). An MRI in August 2001 revealed that Plaintiff had a herniated disc at L5-S1 with stenosis of the right neuroforamina and lateral recess of the spinal canal (Tr. 207).

On September 14, 2001, Paul A. LaHaye, M.D., examined Plaintiff (Tr. 273-74). Dr. LaHaye's

examination revealed a normal range of neck motion and positive straight leg raising at about 60 degrees bilaterally. Dr. LaHaye's neurological examination revealed normal strength and sensation, diminished reflexes, and a normal gait. Dr. LaHaye explained to Plaintiff that he felt rather strongly that he should undertake at least six weeks of physical therapy with three sessions per week (Tr. 273). Plaintiff began physical therapy in October 2001 (Tr. 210) but failed to attend his last two scheduled treatment sessions, despite being called three times to reschedule (Tr. 209).

In November 2001, Dr. LaHaye imposed a 25 pound lifting limit on Plaintiff and restricted him from performing repetitive lifting, bending, twisting, and stooping (Tr. 270). Dr. LaHaye characterized Plaintiff's back pain as minimal and occasional, and recommended a gym program (Tr. 270).

Plaintiff saw John D. Hollander, D.P.M., for foot pain from July 2001 to February 2002 (Tr. 219-30). By February 14, 2002, Plaintiff told Dr. Hollander that he had "essentially no foot pain . . ." (Tr. 219).

On January 28, 2002, William H. Ramsey, M.D., examined Plaintiff. Plaintiff told Dr. Ramsey that, "When present, his back pain will give him difficulty with sitting or driving, bending or lifting. He estimates his lifting and carrying capacity safely at 25 to 30 pounds, although admits to lifting items weighing 40 to 50 pounds recently without great difficulty. He reports relief with massage, exercises, rest periods, and ibuprofen." (Tr. 213). Examination of Plaintiff's back revealed mild tenderness in the mid lumbosacral area, a diminished low back range of motion, normal seated straight leg raising, and normal gait (Tr. 214). Dr. Ramsey concluded that Plaintiff was precluded from heavy lifting, repetitive bending, and stooping, and very prolonged sitting or driving (Tr. 216).

In October 2002, Plaintiff received an orthopedic evaluation from Jay Chun, M.D. (Tr. 231-34). Dr. Chun noted that Plaintiff had a normal gait, but had slight difficulty getting on and off the examination table and was in slight discomfort throughout the exam (Tr. 232). Dr. Chun estimated that Plaintiff could stand and walk for two hours, sit less than six hours, and "occasionally lift 20 pounds secondary to severe low back pain." (Tr. 233). Dr. Chun found no manipulative or relevant limitations, but found that bending aggravated Plaintiff's lower back pain (Tr. 234).

On October 16, 2002, Marcia A. Luisi, M.D., completed an electrodiagnostic consultation (Tr.

1  235-36). Dr. Luisi found evidence of left ulnar neuropathy, consistent with a significant degree of ulnar
2  nerve entrapment at the left elbow with electrodiagnostic evidence of denervation. Dr. Luisi found no
3  evidence of ulnar nerve entrapment at the right elbow, very mild carpal tunnel syndrome, and no
4  paresthesias in the median nerve distribution (Tr. 236).

5  On October 29, 2002, a medical consultant performed a Physical Residual Functional Capacity
6  Assessment (Tr. 237-44). The consultant concluded that Plaintiff could lift 20 pounds occasionally and 10
7  pounds frequently, stand and/or walk for six hours in an 8-hour workday, and sit the same with a chance to
8  change position every hour (Tr. 238). A second assessment performed on January 13, 2003, contains the
9  same findings (Tr. 278-85).

10  In 2001 and 2002, Plaintiff was treated by L. Reed Walker, Jr., M.D. (Tr. 251-57). Plaintiff
11  informed Dr. Walker of his herniated disc at L5-S1 on November 14, 2002 (Tr. 251).

12  On November 25, 2002, Harry E. Phillips, M.D., analyzed an Open MRI of Plaintiff's cervical
13  spine. The MRI revealed degenerative spondylosis and spinal stenosis primarily at C4-5 and C5-6 (Tr.
14  246). A further MRI on December 3, 2002, analyzed by Joseph Dixon, M.D., revealed a disc protrusion
15  at L5-S1 with "questionable effect" on the right S1 nerve root (Tr. 266).

16  On January 7, 2003, Dr. LaHaye re-evaluated Plaintiff (Tr. 263-64). Dr. LaHaye found restricted
17  motion of the cervical spine and recommended surgery on his lumbar disk (Tr. 264).

18  On February 22, 2003, William L. Schwimmer, Ph.D., performed a psychological evaluation (Tr.
19  275-77). At the evaluation, Plaintiff reported that his activities included reading a lot, watching television,
20  picking up his mail, and having "a couple of drinks." (Tr. 275). Depending upon his mood, he "might have
21  more than a couple of drinks" and then go home. Every two to three weeks, he "snorts cocaine for 2-3
22  days" (Tr. 275). Dr. Schwimmer concluded that Plaintiff did not have a severe mental impairment (Tr.
23  276).

24  Dr. Walker saw Plaintiff again on May 13, 2003 (Tr. 320-26). Although Dr. Walker noted
25  evidence of degenerative disk disease and an MRI that revealed cervical canal stenosis (Tr. 326), he
26  opined that Plaintiff could perform sedentary work (Tr. 320). In June 2003, Dr. Walker opined that
27  Plaintiff could resume his past work on October 1, 2003 (Tr. 336).

28

4

On July 16, 2003, Edward Eyster, M.D., evaluated Plaintiff for his neck and lower back complaints (Tr. 341-42). Dr. Eyster noted that Plaintiff walked normally and demonstrated a preserved range of lumbar motion, with no reflex, motor, or sensory abnormalities in his legs (Tr. 341). According to Dr. Eyster, Plaintiff had no cervical radicular complaints or symptoms suggesting spinal cord compression, but had some limitation of cervical extension, a good range of shoulder motion, and atrophy of the left triceps when compared to the right (Tr. 341-42).

On August 4, 2003, William P. Meseroll, M.D., performed another MRI of Plaintiff's cervical spine, which showed spinal stenosis at C4-5 and C5-6 (Tr. 337). Based on the MRI, Dr. Eyster found no instability or neurological evidence of cord defect, but considered Plaintiff a candidate for decompression at C5-6 and C6-7 (Tr. 340).

On August 18, 2003, based on the August 4 MRI, Dr. Walker opined that Plaintiff was unable to perform any work as of that date (Tr. 332).

**C.   Testimony at Hearing**

At the September 3, 2003, hearing before ALJ Laverdure, Plaintiff appeared in person with his representative, Dan McCaskell. Also present at the hearing was Robert Rashkey, the vocational expert (Tr. 34-35).

<u>Plaintiff's Testimony</u>

At the hearing, Plaintiff testified that

(1)   he was 42 at the time of the hearing (Tr. 46);

(2)   he is right-handed (Tr. 37);

(3)   the last time he worked in any capacity was September 2001 at Source One (Tr. 37);

(4)   in June of 2001, he herniated his lower disk while lifting heavy paper into a cutting machine (Tr. 38);

(5)   he had been in four or five automobile accidents (Tr. 38);

(6)   he injured his right shoulder when he tripped over a railroad tie (Tr. 39);

(7)   he attempted vocational rehabilitation, but did not complete the course because he could not sit at the computer and type for more than 45-50 minutes at a time without neck, arm

5

|   |   |   |
|---|---|---|
| 1 | | and lower back pain (Tr. 39); |
| 2 | (8) | Dr. Walker and Dr. Eister both told him that he should not move his neck at all, and that he would probably be paralyzed if he was ever in another serious accident (Tr. 42); |
| 4 | (9) | he injured his lower back on June 4, 2001, when he was loading paper into a cutting machine. He tried to work a couple more days, but the pain did not go away (Tr. 46-47); |
| 6 | (10) | his right arm had gone numb twice and he had lost all control of the small finger on his left hand (Tr. 49); |
| 8 | (11) | he could not use his right arm for several months (Tr. 49); |
| 9 | (12) | he continued to have problems at the time of the hearing, including throbbing pain, loss of strength, and numbness (Tr. 52); |
| 11 | (13) | he no longer drove with his right hand (Tr. 52); |
| 12 | (14) | he could type with his right hand for up to 20 minutes, but any longer caused pain up his right arm into the neck (Tr. 52); |
| 14 | (15) | he did not write, other than two or three checks a month (Tr. 53); |
| 15 | (16) | his left hand also had throbbing and numbness, symptoms which started in 1999 (Tr. 54); |
| 16 | (17) | he was in a car accident after his work injury, which caused neck problems, but he did not claim the neck injury as work-related (Tr. 56). |

<u>Vocational Expert Robert Rashkey's Testimony</u>

Vocational Expert Robert Rashkey did not testify at the hearing.

**D.   The ALJ's Findings**

ALJ Laverdure made the following findings:

1. Claimant met the disability insured status requirements of the Act on June 6, 2001, his alleged onset date, and continues to meet those requirements through June 30, 2005.
2. Claimant has not performed SGA since June 6, 2001, his alleged onset date.
3. The medical evidence establishes that claimant has the severe impairments of degenerative disk disease of the cervical spine, herniated disk at L5-S1, without radiculopathy, "largely resolved," status post acromioclavicular separation of the right shoulder, ulnar nerve entrapment of the left elbow, mild bilateral CTS, alcohol and cocaine abuse, ongoing, and depression.
4. Claimant's severe impairments do not meet or equal any listed impairment

6

                    in Appendix 1, Subpart P, Regulation No. 4.
5. Claimant has a RFC for a range of work at the sedentary exertional level with the need for a sit-stand option on an hourly basis, the ability to frequently reach, handle, finger and feel with the dominant right upper extremity, the ability to occasionally reach, handle, finger and feel with the non-dominant right upper extremity and preclusion from bilateral over head reaching.
6. Claimant's subjective complaints, as discussed above, are not fully credible.
7. Claimant is unable to perform past relevant work.
8. Claimant is a 43-year-old individual with two years of college education and past relevant work as a bookbinder and printing machine operator during the last 15 years..
9. Considering claimant's RFC and vocational characteristics, a framework of Rules 201.28 and 201.29 of the medical vocational guidelines directs a finding of not disabled, regardless of whether he has any transferable skills from his past relevant work.
10. Pursuant to 20 C.F.R. §§ 404.1520(f) and 416.920(f), claimant is not and has not been under a "disability" as that term is defined in the Social Security Act, as amended, since June 6, 2001.

(Tr. 29-30).

**E.     The ALJ's Decision**

ALJ Laverdure determined that, based on the applications for a period of disability, disability insurance benefits, and SSI benefits filed on June 25 and November 27, 2002, respectively, Plaintiff was not disabled within the meaning of the Social Security Act and regulations (Tr. 30).

### III. LEGAL STANDARD

**A.     Standard of Review**

This Court has limited jurisdiction in reviewing the ALJ's decision.  The Court may overturn a decision to deny benefits only if it is not supported by substantial evidence or if the decision is based on legal error.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*   Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ.  *Id.*  This Court must uphold the ALJ's decision where the evidence is "susceptible to more than one rational interpretation."  *Id.* at 1040.  If there is evidence in the record as a whole to support the Secretary's findings, then the conclusion must be affirmed.  *Cox v. Califano*, 587 F.2d 988, 989-90 (9th Cir. 1978).

The ALJ's findings, however, must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). If the ALJ applied an improper legal standard, this Court may remand the case for further consideration. The Court must weigh "both the evidence that supports and detracts from the [ALJ]'s conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). In addition, the ALJ is responsible for ensuring that the evidence is carefully considered and that the proceeding is fairly conducted. *Singer v. Weinberger*, 513 F.2d 176, 178 (9th Cir. 1975).

**B.     Disability Determination**

The Social Security Act provides for payment of disability insurance benefits to people who suffer from physical or mental disabilities. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A claimant is determined to be under a disability only if his physical or mental impairment is so severe "that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy," regardless of whether such work exists in the area where he lives, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505. A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

An applicant for disability insurance benefits must establish that a physical or mental impairment prevents him from engaging in any of his previous occupations. *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990). The burden then shifts to the Commissioner to show that the claimant can perform other types of work existing in the national economy which are consistent with the claimant's medically determinable impairments, functional limitations, age, education, and work experience. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). To determine whether this burden is met, the ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such

impairment, if considered separately, would be of sufficient medical severity. *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996).

In determining whether a claimant is disabled, all of the claimant's self-reported symptoms, including pain, and the extent to which those symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence," must be considered. 20 C.F.R. § 404.1529. "Objective medical evidence" means "medical signs [shown by medically acceptable clinical diagnostic techniques] and laboratory findings [shown by the use of medically acceptable laboratory diagnostic techniques]." *Id.* "Other evidence" includes statements or reports from the claimant, treating or examining physicians, and others regarding the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how the claimant's impairment(s) and any related symptoms affect his ability to work. *Id.*

The regulations promulgated by the Commissioner provide for a five-step sequential analysis to be used to determine whether a Social Security claimant is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520. The sequential inquiry is terminated when a question is answered affirmatively or negatively in such a way that a decision can be made that the claimant is or is not disabled. *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir 1990). In steps one through four, a claimant must demonstrate a severe impairment and an inability to perform past work; the Commissioner bears the burden only if the sequential evaluation process proceeds to step five. *Bowen* at 146 n.5; *Andrews*, 53 F.3d at 1040.

**IV. DISCUSSION**

In his motion for summary judgment, Plaintiff argues that ALJ Laverdure's rejection of the treating physician's opinion is erroneous and fails to comply with Social Security Ruling ("SSR") 96-2p. Plaintiff also argues the ALJ's substitution of his medical opinion for that of the treating physician is not supported by substantial evidence. Plaintiff requests that the final decision of the Commissioner be reversed and his case remanded to the Commissioner for further proceedings.

In response, Defendant argues that ALJ Laverdure properly discounted Dr. Walker's opinion and

9

properly evaluated Plaintiff's credibility. Defendant asks the Court to uphold the decision of the Social Security Administration and grant its motion for summary judgment.

This Court must affirm the ALJ's decision if there is evidence in the record as a whole to support his findings. *Cox*, 587 F.2d at 989-90. Using the five-step sequential analysis promulgated by the Social Security Administration to determine whether the claimant is disabled, the ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(b). In this case, ALJ Laverdure found that Plaintiff had not engaged in substantial gainful work activity since June 6, 2001 (Tr. 27).

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act.[1] If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520©). Here, ALJ Laverdure found that Plaintiff had "the severe impairments of degenerative disk disease of the cervical spine, herniated disk at L5-S1, without radiculopaty, status post acromioclavicular separation of the right shoulder and ulnar nerve entrapment of the left elbow" (Tr. 27). ALJ Laverdure also noted that Plaintiff had been diagnosed with mild bilateral CTS, alcohol and cocaine abuse, and depression. *Id.*

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or equals an impairment in the Listing of Impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt P, App. 1. If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). Here, ALJ Laverdure determined that the medical evidence failed to support a finding that Plaintiff's medically determined impairments met or equaled any listed

---

[1] At step two, "severe" means any impairment or combination of impairments that significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). This is a de minimis inquiry designed to weed out nonmeritorious claims at an early stage in the analysis. *Bowen v. Yuckert*, 482 U.S. 137, 148, 153-4 (1987). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two of the analysis. *Id.* at 158.

10

impairment (Tr. 27).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC")[2] is sufficient for the claimant to perform past relevant work. 20 C.F.R. § 404.1520(e). Residual functioning capacity refers to what an individual can still do in a work setting, despite limitations caused by medically determinable impairments. 20 C.F.R. § 416.945(a). Here, ALJ Laverdure found that Plaintiff could not perform his past relevant work (Tr. 29).

In the fifth step of the analysis, the burden shifts to the ALJ to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the medically determinable impairments and symptoms, functional limitations, age, education, work experience and skills. Here, ALJ Laverdure found that Plaintiff was not disabled since there exists a significant number of jobs in the national economy which he was still able to perform (Tr. 29). Specifically, the ALJ found that Plaintiff had an RFC for a range of work at the sedentary exertional level with the need for a sit-stand option on an hourly basis (Tr. 28). In making this finding, ALJ Laverdure stated that he gave weight to the June 2001 and January and October 2002 opinions of treating physicians Walker and LaHaye, examining orthopedist Ramsey, and orthopedic consultative evaluator Chun. ALJ Laverdure also gave weight to the January 2003 opinion of the DDS medical advisor to the extent that he opined an RFC for a range of work at the sedentary exertional level with the need for a sit-stand option (Tr. 28). However, ALJ Laverdure gave little weight to the August 2003 opinion of treating physical Walker, finding it to be inconsistent with the medical record and inordinately based on Plaintiff's subjective complaints. The ALJ also found Plaintiff's subjective complaints less than fully credible.

Plaintiff argues that ALJ Laverdure improperly discounted Dr. Walker's August 2003 opinion. The Court disagrees. First, Plaintiff alleges that he has been disabled since June 2001, yet Dr. Walker's opinion establishes an onset date of August 18, 2003. There is no indication that the opinion is retroactive.

Second, ALJ Laverdure properly discounted Dr. Walker's August 2003 opinion based upon

---

[2]"Residual functional capacity" or "RFC" refers to the claimant's maximum sustained work capacity for sedentary, light, medium, heavy, or very heavy work. In assessing an individual's RFC, the ALJ must consider his or her symptoms (including pain), signs and laboratory findings, together with other evidence. 20 C.F.R. § 404, Subpt. P, App.2 § 200.00(c).

11

inconsistency and lack of clinical findings (Tr. 28). In May 2003, when Dr. Walker opined that Plaintiff was able to perform sedentary work (Tr. 320), he was aware of Plaintiff's cervical canal stenosis (Tr. 326). In June 2003, Dr. Walker characterized Plaintiff's cervical stenosis as "significant," yet he opined that Plaintiff could resume his past medium work on October 1, 2003 (Tr. 336). Thus, since his previous findings do not support the extreme limitations reported in August 2003, the ALJ properly discounted Dr. Walker's opinion on that basis. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Third, ALJ Laverdure also relied upon the opinions of Dr. LaHaye (Tr. 270), Dr. Ramsey (Tr. 216), and Dr. Chun (Tr. 234) that Plaintiff could perform at least a range of sedentary work. Because they are based upon independent clinical findings, they constitute substantial evidence upon which the ALJ properly relied. *Andrews*, 53 F.3d at 1041. Accordingly, the Court finds that ALJ Laverdure's rejection of Dr. Walker's August 2003 opinion is supported by substantial evidence.

Plaintiff also argues that the ALJ improperly discounted his subjective complaints. However, an ALJ is not required to believe all subjective assertions. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In analyzing a claimant's subjective complaints, the ALJ must determine Plaintiff's credibility. *Mason v. Apfel*, 2000 WL 126127, 4 (N.D. Cal. 2000).

SSR 96-7p specifies that the ALJ should consider the following factors when assessing credibility: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate pain or other symptoms; 5) any treatment, other than medication, claimant receives or has received for relief of pain or other symptoms; 6) measures other than treatment claimant uses, or has used, to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) factors concerning claimant's functional limitations and restrictions due to pain or other symptoms. 1996 WL 374186, 3 (S.S.A.).

Here, ALJ Laverdure considered the above-listed factors in making his determination. Specifically, the ALJ stated the following:

> Claimant's testimony is not entirely credible to the extent that his allegations

12

> regarding inability to work is inconsistent with the medical evidence and opinions supporting an RFC for a range of work at the sedentary exertional level. In so finding, I note that claimant acknowledged to QME Ramsey that he had lifted 40 to 50 pounds recently without difficulty and obtained pain relief with conservative treatment, including massage, exercise, rest and Ibuprofen. The undersigned also finds claimant's ability to live independently and maintain active social life indicative of a greater RFC than he is willing to acknowledge. Finally, claimant's relatively minimal treatment records indicates that his medical condition is less severe than alleged.

Tr. 28-29. As the ALJ noted (Tr. 28-29), Plaintiff's treatment had been conservative. Minimal or conservative treatment is an appropriate basis to discount subjective assertions. *Flaten v. Secretary of Health and Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995). Further, inconsistency is also an appropriate basis to discount subjective complaints. *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995). Thus, the ALJ properly considered Plaintiff's admission to Dr. Ramsey that he could lift 25 to 30 pounds safely (Tr. 213). Finally, an ALJ is entitled to draw reasonable inferences from the evidence. *Macri v. Chater*, 93 F.3d at 544. Plaintiff's daily activities in early 2003 included reading "a lot," leaving home to drink, and snorting cocaine for two to three days every two to three weeks (Tr. 275). From these activities, and others in the record, ALJ Laverdure could properly discount Plaintiff's subjective complaints based on his ability to live independently and maintain an active social life.

Thus, the Court finds that ALJ Laverdure considered the relevant evidence, including Dr. Walker's opinions and Plaintiff's subjective complaints, and supported his conclusion with specific, cogent reasons. *Rashad*, 903 F.2d at 1231. Accordingly, the Court finds that there is substantial evidence in the record to affirm ALJ Laverdure's decision that Plaintiff is not disabled within the meaning of the Social Security Act.

## V. CONCLUSION

Based on the foregoing analysis, the Court finds the ALJ's decision is supported by substantial evidence in the administrative record. Accordingly, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: May 31, 2005

/s/ Maria-Elena James  
MARIA-ELENA JAMES  
United States Magistrate Judge